IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

HIGH ROAD HOLDINGS, LLC, an Illinois )
limited liability company and CALLAGHAN )
PAVING, INC., an Illinois corporation, )
                                                    )
                  Plaintiff, )
                                     ) Case No. 1:07-cv-4590
   v. )
                                     ) Judge Joan H. Lefkow
RITCHIE BROS. AUCTIONEERS )
(AMERICA), INC., a Washington )
corporation, )
                 Defendant. )
                                       )

**MEMORANDUM OPINION AND ORDER**

Plaintiffs, High Road Holdings, LLC ("High Road") and Callaghan Paving, Inc. ("Callaghan") (collectively, "plaintiffs"), bring this action against Ritchie Brothers Auctioneers (America), Inc. ("Ritchie") alleging four counts: I) breach of contract; II) breach of fiduciary duty; III) negligent misrepresentation; and IV) violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"). Ritchie removed this action to federal court from the Circuit Court of Cook County pursuant to 28 U.S.C. § 1332(a).[1] Before the court is Ritchie's motion to dismiss with prejudice Count IV of plaintiffs' complaint. Ritchie argues that plaintiffs do not meet the pleading requirements of Federal Rules of Civil Procedure 12(b)(6) and 9(b) and therefore do not state a claim under ICFA. For the following reasons, the court agrees and grants Ritchie's motion to dismiss Count IV [#9] with prejudice.

---

1   Ritchie represents that High Road is an Illinois limited liability company and its only members are citizens of Illinois; Callaghan is an Illinois corporation with its principal place of business in Illinois; and Ritchie is a Washington corporation with its principal place of business in Nebraska. Plaintiffs' complaint alleges that they have sustained damages in the amount of "at least 2 million." *See* Complaint at ¶¶ 35, 40, 44, and 50.

1

**BACKGROUND**

The following facts are taken from plaintiffs' complaint and assumed to be true for the purpose of resolving this motion to dismiss. This action stems from the sale at auction of a parcel of land in Chicago Heights, along with buildings, equipment, machinery and a lifetime operating permit for an asphalt manufacturing facility (together, "the property"). High Road owns the land, while Callaghan owns the improvements, equipment, machinery and the permit.[2] Both High Road and Callaghan are family-owned businesses. Callaghan operated an asphalt manufacturing plant on the land for years. It had only three competitors within a 30-mile radius: K-5 Construction, Gallagher Asphalt, and Lincoln/Alpha Paving. Ritchie is an auction house that specializes in no-reserve auctions.

Callaghan decided to leave the asphalt business in 2005. During the spring, summer, and fall of that year, plaintiffs had several meetings and numerous communications with George Krug of K-5 Construction in which Krug expressed interest in buying certain assets of the property for $5 million. Krug then stopped communicating with plaintiffs. Plaintiffs allege on information and belief that Krug's son began calling Ritchie directly to inquire about when an auction would be held. Complaint at ¶ 12. Also in mid-2005, Charles Gallagher of Gallagher Asphalt contacted the plaintiffs to express interest in buying the property but later broke off discussions.

Having been unable to close a sale through private means, plaintiffs retained Ritchie to sell the property by means of a public auction. They chose Ritchie as auctioneer based at least in part on statements on its company webpage describing its expertise, including claims that

---

[2] Cook County is an EPA "containment zone" and has not issued any new asphalt manufacturing permits for at least 25 years.

Ritchie "knows the market better than anyone" and that its auction process "can maximize the return on your trucks and equipment." Complaint at ¶ 15.

The parties entered into an oral contract under which Ritchie agreed to advertise and hold a public auction, requiring at least three genuine bidders to register in advance and to post $1 million in earnest money to ensure competitive bidding. The parties agreed on a $3 million asking price. Ritchie also agreed to inform plaintiffs of the identity of bidders in advance of the auction so that they could be sure that there would be real competitive bidding and that the promotion done by Ritchie had generated sufficient interest. Ritchie insisted that the auction be without recourse and that it be given complete control over the process. Finally, Ritchie prepared the contract for the sale of the property before the auction and asked plaintiffs to sign it in blank in order to save time.

Country House Group, LLC was formed on November 1, 2005. According to documents on file with the Illinois Secretary of State, Country House's managers are George Krug (of K-5 Construction), Charles Gallagher (of Gallagher Asphalt), and Bruce Arquilla (of Lincoln/Alpha Paving). Its registered business address is the address of Gallagher Asphalt. Plaintiffs allege on information and belief that the managers of Country House took certain steps to prevent competitive bidding and to induce other potential bidders to stay away from the auction. Complaint at ¶¶ 20-21. For example, George Krug called the management of D Construction, another potential bidder and asphalt industry player, and told it not to bid. D Construction, which according to Ritchie was a registered bidder that had posted its $1 million earnest money deposit, did not attend the auction.[3]

---

[3] Plaintiffs allege generally that K-5 Construction, Gallagher Asphalt, and Lincoln/Alpha Paving "formed a secret consortium and created Country House as a dummy entity to eliminate competitive bidding. Country House has no business other than to serve as a vehicle for collusive, non-competitive bidding for the 'Project.'" Complaint

3

The auction was originally scheduled and advertised for November 21, 2005 but did not actually take place until May 31, 2006. Ritchie sought the delay and represented to the plaintiffs that it would generate more interest from the asphalt industry. This representation was based in part on a buzz created by Country House and the appearance that Country House would enter the bidding in competition with Gallagher, K-5, and others.

At the auction, there were many lots on sale and over 1,800 bidders in attendance. Ritchie failed to provide plaintiffs with the bid registration documents before the auction, so plaintiffs do not know who the registered bidders for the property were. They assume that Country House was a registered bidder. Plotke Construction was supposedly a registered bidder but did not make any bids. Plaintiffs allege on information and belief that Plotke registered for the sole purpose of ensuring that Ritchie and/or the plaintiffs would see a sufficient number of registered bidders to go ahead with the auction and that it did not post earnest money. Two other entities, Illinois Truck and Equipment and Palumbo Construction, did bid at the auction, although plaintiffs allege that they did not post the required earnest money. Complaint at ¶¶ 23, 25.

Bidding for the property opened at the $3 million asking price. There were no bids until the price was dropped to $500,000. Junior Palumbo then bid once or twice and Illinois Truck and Equipment made at least one bid. The auction was won by Country House for $1.3 million. Plaintiffs believe that there were several incongruities at the auction: before the auction, Junior Palumbo "fed" Ritchie a comment that he and Dan Plotke were "going to have some fun" at the auction and Ritchie repeated this comment to plaintiffs without making any inquiries about

---

at ¶ 17. Without regard to its sufficiency under Federal Rule of Civil Procedure 9(b), this allegation is not material to plaintiffs' allegation that Ritchie engaged in fraud.

Palumbo or Plotke's real intentions; George Krug, Charles Gallagher, Bruce Arquilla, and Dan Plotke arrived at the auction together, stood together in an unobtrusive location at the back of the auction room, and talked to each other before and during the bidding; and after the auction, George Krug shouted at a Ritchie employee for letting Illinois Truck and Equipment bid against Country House. At the time, plaintiffs did not know that Country House existed or that Gallagher was bidding on behalf of Country House because Ritchie had failed to provide them with that information.

Plaintiffs have refused to complete the sale of the plant to Country House.[4] They allege that the $1.3 million price is so low that it is fraudulent and that the permit alone is worth more than that amount. The equipment has been appraised within the past two years at $2.7 million.

**STANDARD**

A motion to dismiss under Rule 12(b)(6) challenges that plaintiffs' complaint has failed to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6); *General Elec. Capital Corp.* v. *Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). For the purposes of a Rule 12(b)(6) motion, the court takes as true all well-pleaded facts in plaintiffs' complaint and draws all reasonable inferences in favor of plaintiffs. *Jackson* v. *E.J. Brach Corp.*, 176 F.3d 971, 977 (7th Cir. 1999). Factual allegations must, however, be "enough to raise a right to relief above the speculative level.*" Bell Atlantic Corp.* v. *Twombly*, - U.S. -, 127 S. Ct. 1955, 1965, 167 L.Ed.2d 929 (2007), *citing* 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216,

---

[4] In a separate action, Country House brought suit against High Road and Callaghan for specific performance. Complaint at ¶ 33. High Road and Callaghan's pleadings do not reveal the outcome of that litigation, but the court evidently dismissed their counterclaims for fraud and collusion. Complaint at ¶ 33.

pp. 235-236 (3d ed. 2004); *see also Munch* v. *Sears Roebuck & Co.,* 2007 WL 2461660, at *1 (N.D. Ill. Aug. 27, 2007).

Additionally, because it is based on ICFA, Count IV of plaintiffs' complaint is subject to the heightened pleading standard of Rule 9(b), which requires that "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b); *see Costa* v. *Mauro Chevrolet, Inc.*, 390 F. Supp. 2d 720, 732 (N.D. Ill. 2005) ("A complaint alleging a violation of the Illinois [Consumer] Fraud Act must be pled with the same particularity and specificity as that required under common law fraud under Rule 9(b)."); *Munch*, 2007 WL 2461660, at *2-3 (applying Rule 9(b) to an ICFA claim). To meet this particularity requirement, a plaintiff must plead the "who, what, where, when, and how" of its fraud claim with specificity. *DiLeo* v. *Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990).

High Road and Callaghan argue that their complaint satisfies Illinois pleading requirements and thus should not be dismissed under Rules 12(b)(6) and 9(b). *See* Plaintiffs' Response to Defendant's Motion to Dismiss Count IV at 4. The Federal Rules of Civil Procedure apply to cases in federal court, irrespective of the source of subject matter jurisdiction or the state or federal nature of the claim. *See Hannah* v. *Plumer*, 380 U.S. 460, 85 S.Ct. 1136, 14 L. Ed. 2d 8 (1965); *Christensen* v. *County of Boone*, 483 F.3d 454, 465-66 (7th Cir. 2007) ("When state and federal practice differ, federal rules adopted under the Rules Enabling Act prevail."). It is clear that the federal rules set the appropriate standard here.

**DISCUSSION**

    **1.     Stating a claim under ICFA**

First, Ritchie argues that plaintiffs fail to plead a relevant consumer nexus as required by various judicial interpretations of ICFA. Courts have limited application of ICFA to situations where there is some impact on consumers. *See Central Diversey M.R.I. Ctr.* v. *Medical Mgmt. Sciences*, 952 F. Supp. 575, 577 (N.D. Ill. 1996); *Lake County Grading Co.* v. *Advance Mechanical Contractors*, 654 N.E.2d 1109, 1115-16, 275 Ill. App. 3d 452, 211 Ill. Dec. 299 (Ill. App. Ct. 1995). This is particularly the case when an ICFA claim is factually the same as an accompanying breach of contract claim, as plaintiffs' ICFA claim is in this case. *See Lake County*, 654 N.E.2d at 1116.

When the parties are not themselves consumers, plaintiffs must satisfy the "consumer nexus" test by demonstrating that their claim implicates consumer protection concerns or trade practices addressed to the market generally. *See Gelco Corp.* v. *Major Chevrolet, Inc.* 2002 WL 31427027, at *10 (N.D. Ill. Oct. 30, 2002); *Brody* v. *Finch Univ. of Health Scis./The Chicago Med. Sch.*, 698 N.E.2d. 257, 268, 298 Ill. App. 3d 146, 232 Ill. Dec. 419 (Ill. App. Ct. 1998). Here, High Road and Callaghan neither allege that they are consumers nor plead facts that establish them as consumers within ICFA's statutory definition. *See* 815 Ill. Comp. Stat. Ann. 505/1(e) (defining a consumer as "any person who purchases or contracts for the purchase of merchandise not for resale in the ordinary course of his trade or business but for his use or that of a member of his household"); *see also Gelco*, 2002 WL 31427027, at *10-11. Thus, to sustain an ICFA claim, High Road and Callaghan must plead facts that give rise to a consumer nexus.

The consumer nexus alleged by High Road and Callaghan is that "Ritchie's conduct in holding itself out as an expert in the auction sale of construction equipment and related items implicates consumer concerns in that it addresses a state-wide mass market both for auction sellers and buyers." Complaint at ¶ 46. High Road and Callaghan point to Ritchie's website, which asserts, *inter alia*, that Ritchie conducts "over 175 unreserved industrial auctions every year," that it "sells more used equipment than anyone else in the world," that it "know[s] the market better than anyone," and that its unreserved auctions "transcend local market conditions so you can maximize the return on your trucks and equipment." Complaint at ¶ 15.

Drawing all reasonable inferences in favor of plaintiffs, as it must, the court assumes that Ritchie addresses its website to the market generally. Doing so can be a sufficient consumer nexus if an advertisement is deceptive. *See generally Downers Grove Volkswagen, Inc.* v. *Wigglesworth Imports, Inc.*, 546 N.E.2d 33, 41, 190 Ill. App. 3d 524, 137 Ill. Dec. 409 (Ill. App. Ct. 1989) ("[W]here plaintiff has alleged defendant published false information about its prices for services, plaintiff has alleged conduct which implicates consumer-protection concerns."). High Road and Callaghan do not, however, allege that the falsifiable statements on the website (*e.g.*, number of annual auctions and amount of equipment sold) are untrue or misleading. Neither do plaintiffs allege that Ritchie used the website to deceive consumers generally, that Ritchie violated ICFA in the course of any other auctions, or that Ritchie does not possess expertise in no-reserve auctions.

High Road and Callaghan instead allege that Ritchie's claim that its unreserved auctions can "maximize [] return" is a misrepresentation in violation of ICFA. Complaint at ¶ 48. Where such a statement is merely a "subjective description or opinion," it constitutes "puffing"

8

and is not actionable as a fraudulent misrepresentation. *See Tykla* v. *Gerber Prods. Corp.*, 1999 WL 495126, at *5 (N.D. Ill. Jul. 1, 1999), *citing Connick* v. *Suzuki Motor Co., Ltd.*, 656 N.E.2d 170, 183, 275 Ill. App. 3d 705, 212 Ill. Dec. 17 (Ill. App. Ct. 1995), *aff'd in part*, *rev'd in part*, 675 N.E.2d 584, 174 Ill. 2d 482, 221 Ill. Dec. 389 (Ill. 1996). For example, claiming a line of baby food is the "most wholesome nutritious safe food[] you can buy anywhere in the world" falls within the "sales pitch" and "should put the reasonable consumer on alert that the comments are meaningless sales patter." *Tykla,* 1999 WL 495126, at *8. Likewise, Ritchie's claim is a part of its sales pitch to potential customers and does not constitute a promise made to High Road and Callaghan. Moreover, to the extent that "maximize" implies comparing Ritchie to a theoretical competitor, it is "just puffery [that] is not falsifiable and therefore not informative." *August Stork K.G.* v. *Nabisco, Inc.* 59 F.3d 616, 618 (7th Cir. 1995). As puffery, Ritchie's website does not give rise to an actionable claim under ICFA. *See Speakers of Sport, Inc.* v. *ProServ, Inc.*, 1998 WL 473469, at *6 (N.D. Ill. Aug. 7, 1998), *aff'd*, 178 F.3d 862 (7th Cir. 1999).

Thus, the statements on Ritchie's web page cannot constitute a part of the alleged fraud. Plaintiffs' complaint presents no other connection between the alleged fraud and consumer protection concerns or the market generally. Their response brief does not rebut Ritchie's argument that their complaint lacks a consumer nexus and instead approaches the nexus requirement as a type of proximate cause. *See* Plaintiffs' Response to Defendant's Motion to Dismiss Count IV at 2. As a result, they are left without a consumer nexus on which to base their ICFA claim. Without a consumer nexus, they cannot recover under ICFA, *see Central Diversey M.R.I. Ctr.* v. *Medical Mgmt. Sciences*, 952 F. Supp. 575, 577 (N.D. Ill. 1996); *Lake County Grading Co*. v. *Advance Mech. Contractors*, 654 N.E.2d 1109, 1115-16, 275 Ill. App. 3d

9

452, 211 Ill. Dec. 299 (Ill. App. Ct. 1995), and have therefore failed to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). The Northern District of Illinois routinely dismisses ICFA cases for failure to state a consumer nexus. *See, e.g., Greenpoint Mortg. Funding, Inc.* v. *Family First Mortg., Inc.*, 2007 WL 2608554 (N.D. Ill. Sept. 4, 2007); *Pace American, Inc.* v. *Elixir Indus.*, 2007 WL 495302 (N.D. Ill. Feb. 13, 2007); American Roller Co. v. *Foster-Adams Leasing, LLP*, 472 F. Supp. 2d 1019 (N.D. Ill. 2007) (granting summary judgment); *Direct Comms., Inc.* v. *Horizon Retail Const., Inc.*, 387 F. Supp. 2d 828 (N.D. Ill. 2005).

2. **Sufficiency of High Road and Callaghan's Pleadings**

As an alternative basis for dismissal, Ritchie argues that High Road and Callaghan's complaint does not satisfy the pleading requirements of Federal Rules of Civil Procedure 12(b)(6) and 9(b). To state a claim under ICFA, a complaint must set forth specific acts that show (1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; (3) the deception occurred in the course of conduct involving a trade or commerce; and (4) the consumer fraud proximately caused the plaintiff's injury. *Connick* v. *Suzuki Motor Co.*, 675 N.E.2d 584, 593-594, 174 Ill. 2d 482, 221 Ill. Dec. 389 (Ill. 1996).

To state their ICFA claim, High Road and Callaghan incorporate by reference some of the allegations contained earlier in their complaint and tie those facts together in a single paragraph:

> "Ritchie's conduct in demanding total control of the auction, requiring it to be without recourse, compelling pre-signature of the sales contract, and then either failing to exercise any meaningful control over [sic] in such a manner as to permit collusion, or, alternatively actively participating in the conspiracy to rig the auction, constitutes 'the use or employment of any deception [sic] fraud, false pretense, false promise, misrepresentation or the concealment, suppression or

omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact.'" Complaint at ¶ 47.

This paragraph presents two separate theories: 1) Ritchie violated ICFA by participating in a conspiracy to rig the auction and 2) Ritchie's conduct, independent of any other actor, violated ICFA.

High Road and Callaghan's first theory, a conspiracy to rig the auction, falls short. Simply alleging that Ritchie participated in a conspiracy, without supporting that allegation with the deceptive act or practice necessary to state a claim under ICFA, is insufficient. A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan* v. *Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986); Fed. R. Civ. P. 12(b)(6). Furthermore, the court notes that the alleged improprieties surrounding the auction do not substantiate plaintiffs' general allegation of Ritchie's participation in a conspiracy. For example, Ritchie's failure to identify the registered bidders, its repetition of a comment made by a bidder without investigating that bidder's true intentions, and the fact that Krug shouted at a Ritchie employee after the auction are not deceptive acts. In fact, some of the alleged facts undermine the plaintiffs' theory: the fact that Krug was angry at Ritchie for allowing an unregistered bidder to bid against Country House indicates that Ritchie was *not* acting in concert with Country House, as does plaintiffs' allegation that Plotke registered for the auction to trick plaintiffs *and/or Ritchie* into believing that there were a sufficient number of bidders to go ahead with it. Additionally, none of these allegations satisfy the "who, what, where, when and how" of a conspiracy to defraud. *See DiLeo* v. *Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990); Fed. R. Civ. P. 9(b). Finally, Ritchie apparently had nothing to gain from conspiring to lower the

auction price of the property; the parties represent that it was to be paid based on a percentage of the sale price. *See id.* at 629.

The second theory of High Road and Callaghan's ICFA claim is that that "demanding total control of the auction, requiring it to be without recourse, compelling pre-signature of the sales contract, and then . . . failing to exercise any meaningful control over [sic] in such a manner as to permit collusion" were deceptive acts, frauds, false pretenses, false promises or misrepresentations upon which Ritchie intended the plaintiffs rely.

First, High Road and Callaghan do not provide the identity of the persons making statements, the time and place of the statements or the method by which the statements were communicated for any of the actions that they link to the ICFA violation. *See Sears* v. *Likens*, 912 F.2d 889, 893 (7th Cir. 1990). These are all communications to which a representative of High Road or Callaghan was a party and are not information that is exclusively within Ritchie's control. Thus, the practice of relaxing Rule 9(b)'s pleading requirements where "information that he is required to plead rests exclusively within the defendants' control or is otherwise unavailable to him" does not apply. *Cf. Gelco Corp. v. Major Chevrolet, Inc.*, 2002 WL 31427027, at *9 (N.D. Ill. Oct. 30, 2002). As a result, High Road and Callaghan have not met the "who, what, where, when, and how" requirement of Rule 9(b). *See DiLeo*, 901 F.2d at 627.

Second, High Road and Callaghan do not describe how they believe the alleged fraud was perpetrated, how Ritchie's statements were false or deceptive, or how Ritchie's conduct was fraudulent at all. As discussed *supra*, to the extent that High Road and Callaghan's ICFA claim focuses on Ritchie's website's claims of expertise, they rely on puffery that is not actionable as fraud. Additionally, a deceptive act or practice "requires more than the mere fact that a

defendant promised something and then failed to do it. That type of 'misrepresentation' occurs every time a defendant breaches a contract." *Lantz* v. *Honda Am. Motor Co.*, 2007 WL 2875239, at *10 (N.D. Ill. May 14, 2007) (internal citation omitted). Even assuming that Ritchie was contractually bound to inform High Road and Callaghan of the identity of all bidders, or to obtain a certain price for the plant, it is not clear why a failure to do so is fraudulent. Nor is it clear how pre-signature of the sales contract was deceptive or aggrieved High Road and Callaghan, who had already agreed to participate in a no-reserve auction. *See id*.

Furthermore, while Rule 9(b) does not require specificity with respect to defendant's mental state, "the complaint must afford a basis for believing that plaintiffs could prove scienter." *Dileo*, 901 F.2d at 629. Here, High Road and Callaghan charge Ritchie with intent, but do not afford a basis for how they will actually prove scienter as they have not plead facts that reveal how Ritchie would benefit from a fraudulently low price at the auction.

In summary, Count IV of High Road and Callaghan's complaint does not meet the pleading requirements of Rules 12(b)(6) and 9(b).

**CONCLUSION AND ORDER**

For the aforementioned reasons, the court grants defendant Ritchie's motion to dismiss Count IV under Rules 12(b)(6) and 9(b). Count IV is stricken from the complaint with prejudice.

ENTER:

Dated: February 15, 2008

_____
JOAN HUMPHREY LEFKOW
United States District Judge